**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| **MARLAYNA MORGAN,** | ) | |
| c/o Cornerstone Law Firm | ) | |
| 5821 NW 72nd Street, | ) | |
| Kansas City, MO 64151 | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| v. | ) | |
| | ) | |
| **REED CHEVROLET, LLC,** | ) | |
| *Serve Registered Agent:* | ) | |
| 120 South Central Ave., Suite 400 | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Marlayna Morgan ("Plaintiff"), by and through her attorneys of record, and for her cause of action against Defendant Reed Chevrolet, LLC ("Defendant"), states and alleges as follows:

### Introduction

1. This is an employment case based upon and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.912 *et seq.* ("MMPA").

2. Because of Defendant's illegal treatment in the terms of conditions, compensation, and privileges of her employment, Plaintiff has been damaged and seeks all remedies and relief available to her.

## The Parties

3. Plaintiff Marlayna Morgan ("Plaintiff") is a female citizen of the United States, residing in Kansas City, Clay County, Missouri.

4. Defendant Reed Chevrolet, LLC ("Defendant") is and was at all relevant times a Missouri limited liability company registered to conduct business in the State of Missouri.

5. Defendant conducts substantial and continuous business in the State of Missouri.

6. Specifically, Defendant owns and operates Reed Chevrolet of St. Joseph, a new and pre-owned Chevrolet dealership located at 3921 Frederick Ave., St. Joseph, Missouri 64506, where Plaintiff formerly worked.

7. On information and belief, Defendant is a subsidiary of Reed Automotive Group, Inc., which owns and operates six (6) other vehicle dealerships in the Kansas City, Missouri metropolitan area.

8. At all relevant times, Defendant engaged in interstate commerce through its sale and distribution of new and pre-owned vehicles.

9. At all relevant times, Defendant employed more than fifteen (15) or more employees.

10. Defendant is an "employer" within the meaning of Title VII.

## Jurisdiction and Venue

11. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1311 for the claims arising under Title VII.

12. This Court has personal jurisdiction because Defendant conducts business within the Western District of Missouri, and specifically, in St. Joseph, Missouri.

13. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's claim arising under the MMPA because this state law claim is so related to the federal claims that they form part of the same case or controversy.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the alleged discriminatory conduct, including Plaintiff's wrongful termination, occurred in the Western District of Missouri.

## Administrative Procedures

15. On or about July 29, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Missouri Commission on Human Rights ("MCHR") against Defendant (attached as *Exhibit 1* and incorporated herein by reference).

16. On or about March 22, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as *Exhibit 2* and incorporated herein by reference).

17. The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties, and accordingly, the sweep of the judicial complaint may be and is as broad as the scope of an EEOC investigation which could reasonably be expected to have grown out of the Charge of Discrimination.

18. This lawsuit is filed within ninety (90) days of the EEOC's issuance of the Notice of Right to Sue.

19. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

20. This action is timely filed within the applicable statutes of limitations.

## Additional Factual Allegations

21. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above-numbered paragraphs.

22. Plaintiff is female.

23. On or about February 29, 2020, Defendant hired Plaintiff as a Sales Manager at its Reed Chevrolet dealership located at 3921 Frederick Ave., St. Joseph, Missouri 64506 ("the Dealership").

24. During Plaintiff's employment, she was the only female management-level employee.

25. The President of Defendant's parent company, Reed Automotive Group, Inc., is Randall Reed ("Owner Reed") (male).

26. Owner Reed also has ownership interest in Defendant.

27. When Owner Reed visited the Dealership, he often expressed that Defendant was a "Christian" organization, and that he personally identified as Christian.

28. Plaintiff identifies as non-Christian and an atheist.

29. Plaintiff's direct supervisor at the Dealership was General Manager Randy Crowell ("GM Crowell") (male).

30. Plaintiff also worked closely with New Car Manager Chad Fuller ("Manager Fuller") (male).

31. In approximately mid-March 2023, about two weeks into Plaintiff's employment with Defendant, Manager Fuller told Plaintiff, "Hey girl! I missed you the other day!" and smacked her buttocks.

32. Plaintiff told Manager Fuller that his conduct was inappropriate.

33. Manager Fuller apologized and told Plaintiff not to tell anyone.

34. However, Plaintiff reported the unwanted sexual contact to GM Crowell, who just laughed it off and told Plaintiff that "boys will be boys."

35. Plaintiff also reported this incident to Owner Reed's son, Manager Trevin Reed ("Manager T. Reed") (male).

36. On information and belief, Defendant did not discipline Manager Fuller for this incident.

37. Afterward, Plaintiff continued to suffer and witness ongoing, offensive sexual comments and/or conduct from Manager Fuller that lasted through her wrongful termination. Some examples include, but are not limited to, the following:

   a. Making comments about Plaintiff's breasts.

   b. Telling Plaintiff that if Manager Fuller was not married, he would want to go live on an island with Plaintiff.

   c. Putting his hand around Plaintiff's throat while making sexual "jokes," at which point Plaintiff would walk away from him.

   d. Regularly making sexual comments about female customers, such as, "did you see her ass?" and, "you need to do a fly-by and check her out."

   e. Making lewd comments about the bodies of other female employees.

38. On one occasion, Manager Fuller used his phone camera to record an image up the skirt of Receptionist Jenny Nabil ("Receptionist Nabil") (female) while her back was turned.

39. Throughout her employment, Plaintiff frequently heard Manager Fuller make sexual comments about Receptionist Nabil.

40. On another occasion, a male employee of Defendant took a video of him having consensual sex with Receptionist Nabil outside of work and showed the video to male colleagues at the Dealership.

41. Plaintiff regularly reported this sexually offensive and harassing conduct to GM Crowell, although he was sometimes present when these incidents took place.

42. Plaintiff was also subjected to less favorable treatment compared to her male colleagues and denied advancement opportunities.

43. For example, in approximately October 2020, Defendant had an opening for the Used Car Manager position, which was a higher paying position than Plaintiff's current role.

44. Plaintiff previously expressed to GM Crowell her interest in advancing at the Dealership and ultimately working her way up to General Sales Manager.

45. Nonetheless, Manager Crowell selected a male employee from the finance department, Jeremy Farmer ("Farmer") (male).

46. Farmer had less seniority and car industry experience than Plaintiff.

47. Although Plaintiff regularly outperformed her male colleagues in sales, her male coworkers received praise and recognition while Plaintiff was overlooked.

48. In approximately May 2021, Plaintiff learned she was pregnant.

49. Plaintiff was not married to the father of her baby.

50. Plaintiff disclosed her pregnancy to GM Crowell, but asked him not to share it with anyone because she feared her male coworkers would think Plaintiff was incapable of performing her job duties while pregnant.

51. On or about June 22, 2021, GM Crowell asked Plaintiff to come to the Dealership, even though it was her day off.

52. Before Plaintiff arrived, GM Crowell had called Farmer into a meeting with Owner Reed and Manager T. Reed.

53. On information and belief, they accused Farmer of being the father of Plaintiff's child, making comments such as, "tell me you're not that kid's dad!"

54. Owner Reed told Farmer that Defendant is a "Christian organization," and Defendant takes "the institution of marriage very seriously."

55. Farmer had a wife and child.

56. When Plaintiff arrived, GM Crowell and the Reeds called her into a meeting.

57. They questioned Plaintiff about who fathered her child, and asked if she and Farmer were a "thing."

58. Plaintiff told them that her relationship with Farmer was and always had been platonic.

59. The Reeds told Plaintiff, "we can't have you on the staff if you are jeopardizing people's marriages," and that it "went against everything they believed in as a Christian-run organization."

60. These comments offended Plaintiff, as she interpreted them as being promiscuous based on offensive gender stereotypes, and as discriminatory because Plaintiff did not comport with their "Christian "ideals" as a single mother.

61. On or about June 23, 2021, Manager T. Reed apologized to Plaintiff about the meeting the day prior referring to it as a "witch hunt" against her.

62. Throughout Plaintiffs employment with Defendant's, managers prayed during employee meetings in which Plaintiff declined to participate in and Respondent regularly invited a preacher to the dealership to counsel employees.

63. During Plaintiffs pregnancy, GM Crowell and Manager T. Reed made comments to Plaintiff about "leaning on the church" to assist with her pregnancy. Upon information and belief GM Crowell knew that Plaintiff was not Christian.

64. After the June 22, 2021, meeting, news of Plaintiffs pregnancy spread to other male managers.

65. Plaintiff endured offensive gender and pregnancy comments while employed by Defendant such as:

    a.      male co-workers continued to "joke" and speculate that Manager Farmer was the father of her child;

    b.   manager T. Reed told Plaintiff, "she needed to be beyond approach in her relationship with Manager Farmer so no one would think the wrong thing";

    c.   male co-workers would comment on Plaintiffs pregnancy, waddle and the size of her breasts;

    d.   Manager Fuller told Plaintiff if her water broke on the showroom floor, "he would not deliver her baby".

    e.   Manager Fuller "joked" about stealing Plaintiffs breast milk, making comments such as, "I am thinking about pouring myself a glass of that milk in the fridge."

66. Toward the end of Plaintiffs pregnancy, she was no longer allowed to bid cars "in case her water broke" when she was in a vehicle with a customer.

67. In approximately September 2021, Plaintiff hired an openly gay female to work in her department as a salesperson. GM Crowell told Plaintiff that the Reeds would not like it because Defendant is a "Christian organization".

68. GM Crowell suggested the new hire would be "confusing" for Defendants customers because they would not know if she was male or female.

69. GM Crowell did not like when said employee discussed her wife at work because it "went against Christianity".

70. Plaintiff interpreted GM Crowell's comment about employee, discriminatory based on sexual orientation and/or failure to conform with gender stereotypes. Plaintiff told GM Crowell his comments were out of line and what mattered was that she was a good employee.

71. In mid-November 2020, Plaintiff contacted Human Resources representative Kate Sammons about taking FMLA and short-term disability for maternity leave.

72. On November 24, 2021, Plaintiff gave birth to her son, she shared a photograph of her son with coworkers and Manager Fuller commented that the baby resembled Manager Farmer.

73. Upon information and belief Manager Fuller later referred to a African American customer as the N-word, in front of Finance Manager Spearman (African American male).

74. Manager Farmer was a witness to the incident and Plaintiff called GM Crowell to inform him this racial slur was offensive and inappropriate. Manager Fuller continued to work for Defendant, after making racist remarks in the dealership.

75. On or about January 12, 2022, Plaintiff returned from maternity leave. The Plaintiff was breastfeeding her son, which required her to pump at work every two to three hours. Plaintiff struggled to find a private place to pump at work and ended up using the public restroom at the dealership.

76. GM Crowell was visibly irritated when Plaintiff would ask him to cover the tower when she needed to leave to pump. GM Crowell made comments to Plaintiffs mother, who also worked at the dealership stating, "that her head was not in the game nor was she focused" since returning from maternity leave.

77. On or about February 2, 2022, Manager Farmer resigned his employment with Defendant, making the Used Car Manager position open again. Plaintiff told GM Crowell she was interested.

78. On or about February 3, 2022, Owner Reed came to the dealership and met with GM Crowell. Plaintiff learned later that day that she was again being passed over for the Used Car Manager position and that Defendant was interviewing an outside male.

79. Later in the day on February 3, 2022, GM Crowell called Plaintiff to his office with H.R. Representative Salmon present. Plaintiff was informed she was being terminated because owner Reed "couldn't trust her" because Plaintiff interviewed for another position.

80. In late January 2022, Defendant posted an Automotive Sales Manager position confidentially on Indeed.com, which Plaintiff applied for. This position listed all of Plaintiffs job duties as Sales Manager, on information and belief this was Plaintiffs Sales Manager position at the dealership.

81. Plaintiff had at least two of her male colleagues openly apply and interview for positions at other dealerships but were not terminated and continued working for Defendant.

<u>**COUNT I**</u>
**Violation under 42 U.S.C. §§ 2000e *et seq.* (Title VII)**
**Retaliation**
**(Against All Defendants)**

82. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

83. During her employment, Plaintiff made a good faith report of sexual harassment in the workplace.

84. During her employment, Plaintiff opposed the sexually harassing comments made toward her and about her by members of upper management, including General Manager Randy Crowell and New Car Manager Chad Fuller.

85. By making good faith reports of sexual harassment and by opposing sexual harassment in the workplace, Plaintiff engaged in multiple protected activities throughout her employment.

86. By reason of Plaintiff's complaints of and opposition to sexually harassing and/or discriminatory conduct in the workplace, Defendants retaliated against Plaintiff by terminating her employment.

87. Plaintiff's good faith reports of sexual harassment and/or opposition to sexual harassment in the workplace were determining factors in Defendants' adverse employment actions against her, including the decision to terminate her employment.

88. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

89. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including harassment and retaliation.

90. Defendants failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

91. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

92. As a further direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

93. By failing to take prompt and effective remedial action, Defendants' in effect condoned, ratified, and/or authorized retaliation against Plaintiff.

94. Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

95. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover her reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including but not limited to back pay and the value of lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

<u>**COUNT II**</u>
**Violation under 42 U.S.C. §§ 2000e *et seq.* (Title VII)**
**Sexual Harassment – Hostile Work Environment**
**(Against All Defendants)**

96. Throughout Plaintiff's employment, Defendants subjected her to severe, pervasive, and unwelcome harassment, such as engaging in and condoning sexually explicit, inappropriate, and offensive comments by management-level employees.

97. The sexual harassment to which Plaintiff was subjected affected a term, condition, or privilege of her employment because the conduct was continuous, outrageous, humiliating, and reasonably interfered with her ability to perform the functions of her employment.

98. Plaintiff's sex was determining factor in the harassment to which she was subjected. A reasonable person in Plaintiff's position would find Defendants' conduct, including the ongoing sexual harassment to which Plaintiff was subjected, to be offensive, hostile, and/or abusive.

99. Defendants knew or should have known of the harassment of Plaintiff by management-level employees (including Owner Randall Reed and General Manager Randy Crowell) but failed to exercise reasonable care to prevent and promptly correct the harassment. At all times mentioned herein, before and after, the above-described perpetrators were agents, servants, and employees of Defendants, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized Defendants, thus making Defendants liable for said actions under the doctrine of *respondeat superior*.

100. Defendants failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

101. Defendants failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

102. Plaintiff suffered intentional discrimination at the hands of the Defendants based on her sex in violation of Title VII.

103. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

104. By failing to take prompt and effective remedial action, Defendants in effect condoned, ratified, and/or authorized the discrimination against Plaintiff. Defendants' conduct was

willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future. Plaintiff is entitled to recover reasonable attorneys' fees from Defendants as provided in 42 U.S.C. § 2000e-5.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants for economic damages, including, but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation of MO. REV. STAT. §§ 407.911 *et seq.***
**Unpaid Sales Commissions**

105. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

106. Defendant is a firm, corporation, partnership, or other business entity with a place of business in the State of Missouri.

107. Defendant produces, imports, provides, or distributes a product or service for sale, including new and pre-owned vehicles and vehicle repair services.

108. Defendant contracts with "sales representatives" to solicit orders for the aforementioned product(s) and service(s).

109. Defendant partially compensates the "sales representatives" by commission.

110. Defendant is a "principal" as that term is defined by R.S.Mo. § 407.911(2).

111. Plaintiff is a person who contracted with Defendant to solicit orders and who was compensated in part by commission.

112. Plaintiff is a "sales representative" as that term is defined by R.S.Mo. § 407.911(3).

113. In addition to a base salary, Plaintiff earned a commission for each customer appointment she scheduled that resulted in a sale.

114. Defendant terminated Plaintiff on or about February 3, 2022.

115. Defendant failed to pay Plaintiff her full sales commissions within sixty (60) days of the end of Plaintiff's employment.

116. Due to Defendant's failure to pay Plaintiff her full sales commissions, Plaintiff has been damaged.

117. Plaintiff has suffered actual damages in the amount of her unpaid commissions, which were earned throughout her employment, and which were to be paid to her within sixty (60) days of the end of Plaintiff's employment with Defendant.

118. Plaintiff is also entitled to an additional amount of damages as if Plaintiff were still earning commissions calculated on an annualized pro rata basis from the date of Plaintiff's termination until the date of payment.

119. As of the date of filing this Petition for Damages, Plaintiff has not been paid the aforementioned unpaid commissions.

120. Plaintiff further requests that, upon Plaintiff succeeding on any significant issue in this litigation which achieves some of the benefit Plaintiff sought in bringing this lawsuit, that the Court find that Plaintiff is the prevailing party in this action.

121. Plaintiff requests that upon becoming the prevailing party, the Court award reasonable attorneys' fees and costs.

122. Plaintiff requests pre-judgment and post-judgment interest.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant Reed Chevrolet, LLC for actual economic damages, including but not limited to an additional amount of damages as if Plaintiff were still earning commissions calculated on an annualized pro rata basis from the date of Plaintiff's termination until the date of payment of Plaintiff's unpaid commissions, for attorney's fees and costs incurred herein; for pre-judgment and post-judgment interest; and for such other and further legal and equitable relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: _/s/ Ryan M. Paulus_____
Ryan M. Paulus        MO Bar No. 59712
r.paulus@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone            (816) 581-4040
Facsimile            (816) 741-8889

ATTORNEYS FOR PLAINTIFF